**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LATASHA THOMPKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 1339 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Latasha Thompkins ("Plaintiff") seeks judicial review of a final decision of Michael J.

Astrue, Commissioner of Social Security ("Commissioner"), denying her disability insurance

benefits ("DIB") or supplemental security income ("SSI"). Before this Court is Plaintiff's

Motion for Summary Judgment. The parties have consented to have this Court conduct any and

all proceedings in this case, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c)

and N.D. Ill. R. 73.1(c). For the reasons set forth below, this Court affirms the Commissioner's

decision in part and remands the case for further proceedings consistent with this opinion.

### I. Procedural History

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits

and Supplemental Security Income on July 5, 2005. (R. at 49, 112-114.) She alleged that she

had a disability that began on January 1, 2005. (R. at 49, 118.) The Social Security Commission

denied her claim on December 9, 2005 and again on May 10, 2006 after Plaintiff had asked for reconsideration. (R. at 41-42, 42-44, 69.)

After the second denial, Plaintiff filed a timely written request for a hearing on June 23, 2006. (R. at 85.) The hearing took place on April 20, 2007 before Administrative Law Judge Daniel Dadabo ("the ALJ"). (R. at 9-40, 49-60.) On October 25, 2007, the ALJ found that Plaintiff was not disabled and denied her claim for benefits. (R. at 46-60.) Plaintiff filed a timely Request for Review of the hearing decision with the Social Security Administration's ("SSA") Appeals Council (the "Appeals Council"). (R. at 6.) When the Appeals Council denied her appeal on January 21, 2009, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## II. Background

### A. Plaintiff's Background

Plaintiff was born on December 27, 1973 and was thirty-one years old at the onset of her alleged disability. (R. at 112, 118.) Plaintiff's educational history shows a highest grade level completion at the seventh grade level and indicates attendance of G.E.D. classes but provides no dates of attendance nor whether the program was subsequently completed. (R. at 152, 57, 172.) Plaintiff's work experience in the fifteen years prior to the onset of disability consists of two cashier positions held during April 1996 through January 1998 and May 2003 through January 2005. (R. at 179.)

### B. Medical Treatment and Opinions

#### 1. Medical Treatment

Plaintiff went to the emergency room of St. Mary of Nazareth Hospital on May 10, 2005 for outpatient treatment of depression and suicidal ideation.[1] (R. at 260-261.) Plaintiff's evaluation showed a history of substance abuse starting at age sixteen. (R. at 262.) At this visit, Dr. Isadora Cardona diagnosed Plaintiff with Major Depressive Disorder, Severe and assigned her a DSM-IV Global Assessment of Functioning ("GAF") score of forty-five. (R. at 269.) On June 22, 2005, Plaintiff underwent further psychological evaluation under Dr. Inna Persina at the St. Mary of Nazareth Hospital. (R. at 273.) Plaintiff was diagnosed with Major Depressive Disorder, Recurrent, Severe and alcohol dependance. (R. at 275.) Plaintiff was also assigned a GAF score of thirty-eight. (R. at 275.) Plaintiff continued treatment through April 4, 2006, under both Dr. Persina and Dr. Cardona. (R. at 277-292.) Progress notes dated May 10, 2005 through December 8, 2005 show diagnoses of "Major Depressive Disorder, Severe" on eight out of twelve progress notes and four diagnoses of "Major Depressive Disorder" with unspecified severity.[2] (R. at 281-283, 286-296.) Progress notes dated January 13, 2006 through December 20, 2006 show diagnoses of "Major Depressive Disorder, Moderate" on five out of fifteen progress notes, nine diagnoses of "Major Depressive Disorder" with unspecified severity and one diagnosis of "Major Depressive Disorder, Severe" on September 12, 2006. (R. at 277-280, 380-391.) The remaining progress notes, dated February 21, 2007 and January 8, 2007,

---

[1] As the issues on appeal address only Plaintiff's mental impairments, Plaintiff's asthmatic condition will not be addressed in this Opinion. (Pltf.'s Mot. at 1.)

[2] The progress notes described by the Court are dated in 2004. However, the Court construes them as indicating 2005 because the Plaintiff did not seek treatment until May 10, 2005.

indicate one diagnosis of "Major Depressive Disorder" with unspecified severity and one diagnosis of "Major Depressive Disorder, Moderate" respectively. (R. at 378-379.) The progress notes also indicate that Plaintiff abstained from alcohol and drug use from December 8, 2005, through April 4, 2006. (R. at 277-280.)

### 2. Consultative Psychiatric Evaluation – Dr. Ghadiali

On November 19, 2005, Plaintiff underwent a consultative psychiatric evaluation with Dr. Nafisa Yunus Ghadiali at the request of the Social Security Administration. (R. at 314-331.) Plaintiff reported feeling sad, suicidal, and angry towards her caseworker; being irritable; and having difficulty in sleeping. (R. at 314.) Plaintiff also reported that she felt anxious and believed that people intended to hurt her. (R. at 315.) Plaintiff stated she stopped working in February 2005 because of problems with her son and did not seek other work so that she could complete her G.E.D. (R. at 315.) Dr. Ghadiali's report on Plaintiff's mental status indicated that she was cooperative and related well but that her mood was sad and depressed and that she cried often. (R. at 316.) Dr. Ghadiali diagnosed Plaintiff with Major Depression, recurrent, moderate and assigned a GAF score of forty-five to fifty. (R. at 317.)

### 3. Non-Examining State Agency Psychologist Consultant

On December 3, 2005, a non-examining state agency psychologist consultant ("the Psychologist Consultant"), Dr. David Gilliland, examined the record to assess the severity of Plaintiff's mental impairment according to the criteria set forth by 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A § 12.04 ("Listing 12.04"). (R. at 319-332.) Dr. Gilliland concluded that Plaintiff suffered from Depressive Syndrome characterized by appetite disturbance with change in

weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentration or thinking; and thoughts of suicide. (R. at 322.) Dr. Gilliland concluded that Plaintiff had some mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace and no episodes of decompensation, each of extended duration. (R. at 329.)

### 4. Treating Physician – Dr. Persina

On August 28, 2006, Dr. Persina completed a Psychiatric Evaluation Form for Affective Disorders according to Listing 12.04. (R. at 369-75.) Dr. Persina indicated that she had treated Plaintiff monthly since May 5, 2005, and diagnosed Plaintiff with Major Depressive Disorder, Severe. (R. at 370.) Dr. Persina opined that Plaintiff suffered from five symptoms of Depressive Syndrome, two symptoms of manic syndrome, and demonstrated no signs of bipolar syndrome. (R. at 371.) Dr. Persina also concluded that Plaintiff's symptoms resulted in marked impairments in daily living activities; social functioning; maintaining concentration, persistence or pace; and repeated episodes of decompensation. (R. at 374.) Dr. Persina further found that Plaintiff had a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation or ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." (R. at 374.) Finally, Dr. Persina stated that Plaintiff had experienced repeated episodes of decompensation and that Plaintiff had a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (R. at 374.)

- 5 -

## C.    The Hearing for Benefits

### 1.    Plaintiff's Testimony

Plaintiff testified before the ALJ on April 20, 2007. (R. at 11-32.) Plaintiff stated that she first saw Dr. Persina in 2005 in an outpatient setting and continued to see her about once a month. (R. at 18-19.) Plaintiff also saw Dr. Cardona during that period at a frequency of approximately twice a month. (R. at 19.) As part of her treatment, Plaintiff was instructed to abstain from alcohol use, and she had successfully done so for approximately a year and a half with only one relapse. (R. at 20.) Plaintiff testified that she was more stable since ceasing alcohol use but that she suffered from crying spells at least three times a day. (R. at 21-22.) Plaintiff stated that the last episode where she felt she was going to hurt herself was two years prior. (R. at 23.) Plaintiff stated that she leaves the house approximately three times a week to take her son to school. (R. at 24.) Plaintiff further stated that she is "out of it" a majority of the day due to her medications. (R. at 28.) Plaintiff testified that she no longer felt violent but continued to feel sad. (R. at 28.) Plaintiff also testified that she was in "a fog" until mid afternoon, was unable to concentrate, unable to stay on task, would isolate herself and that there were days she would not leave her room. (R. at 29.) Plaintiff stated that she locks herself in her room approximately seven days a month. (R. at 30.) Plaintiff also testified that her past abusive relationships affected how she interacted with people in a work setting and affected her trust in people. (R. at 31.)

### 2.    Vocational Expert's Testimony

Mr. Newman, the vocational expert ("VE"), gave the remaining testimony. (R. at 31.) The VE testified that Plaintiff's work history consisted of cashier work held from April 1996

until January 1998, and clerk or cashier work held from May 2003 until January 2005. (R. at 32.) The VE classified this work as unskilled, light level because Plaintiff was on her feet most of the day, scanning items and making change. (R. at 32.) The ALJ then asked a series of questions about the ability of the Plaintiff to perform various types of work. (R. at 33-39.) The VE agreed with the Commissioner's initial assessment that Plaintiff was able to perform unskilled, simple, repetitive tasks and that she was not significantly limited in her ability to understand, remember and carry out simple instructions, or to interact with others and make routine work changes. (R. at 34.) The ALJ asked the VE to additionally consider that Plaintiff should not interact on an extended basis through written or oral communication and only engage in superficial contact. (R. at 34.) The VE concluded that an individual like the one described by the ALJ would not be able to perform a cashier job due to the ongoing interaction with customers. (R. at 35.)

Regarding other unskilled labor that Plaintiff could perform, the VE opined that work as a dining room attendant or hand packer fit the requirements set out by the ALJ. (R. at 35.) The ALJ then asked the VE to further consider that Plaintiff would be alert and on task for only a tiny fragment of the day. (R. at 36.) The VE stated that a person who has difficulty concentrating or needs to be away from work more than ten minutes per hour would not be tolerated. (R. at 36.) The VE further opined that the need to take two to three unscheduled breaks would negatively impact an individual's ability to perform adequately and would not be tolerated; that an employer would not permit more than one absence per month or twelve absences a year; and there were no positions available for persons who would be functional only seven days a month. (R. at 36-37.) The VE concluded that the unskilled positions being discussed had limited flexibility in terms of an individual's ability to leave the work area or maintain productivity. (R. at 38.)

## III. ALJ's Findings

The ALJ made the following findings in an opinion dated October 25, 2007:

1.    The claimant continues to meet the disability insured status requirements of the Act only through December 31, 2007.

2    The claimant has not engaged in substantial gainful activity since January 1, 2005, the alleged date of disability onset (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: major depressive disorder with a history of alcohol abuse and intravenous drug abuse in alleged remission, borderline intellectual functioning, and mild-to-moderate asthma (20 CFR 404.1520(c) and 416.920(c)). These impairments limit the claimant's ability to perform basic work activities.

\* \* \*

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of medium and light work except that she is restricted to performing simple, routine, repetitive tasks which require little judgment or decision-making, do not require extended written or oral communications, do not require contact with the public, do not require her to work around excessive dust, fumes, and odors, and do not require exposure to temperature extremes.

\* \* \*

6.    The claimant is unable to perform any past relevant work (20 CFR 404/1565 and 416.965).

\* \* \*

7. The claimant, who was born on December 27, 1973, was [thirty-one] years old on the alleged onset of disability date, an age which meets the regulatory definition of a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964)

\* \* \*

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 49-60.)

The ALJ specifically discussed the reports of Dr. Persina, Dr. Ghadiali, and the

Psychologist Consultant in the finding that Plaintiff's impairments did not meet or medically

equal a Listing level impairment. (R. at 54-55.) Furthermore, the ALJ found that Dr. Persina's

opinion was internally inconsistent with her medical opinion, stating that the progress notes were

longitudinally inconsistent with Dr. Persina's opinion regarding the severity of Plaintiff's

impairments. (R. at 54.) The ALJ concluded that Plaintiff's statements regarding the intensity,

persistence, and limiting effects of her symptoms were not entirely credible. (R. at 57.) The

ALJ cited discrepancies between her testimony and the information she furnished to

- 9 -

Dr. Ghadiali, attendance of G.E.D. classes, the longitudinal record, and lack of psychiatric hospitalizations. (R. at 57.)

## IV. Legal Standard

A claim of disability is determined under a sequential five-step analysis. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At the first step, the ALJ considers whether the claimant is engaging in substantial gainful activity. At the second step, the ALJ evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. At the third step, the ALJ compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation proceeds to step four. At the fourth step, the ALJ assesses the applicant's Residual Functional Capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, she is not disabled. If the applicant cannot engage in past relevant work, the ALJ then assesses whether she can engage in other work in light of her RFC, age, education, and work experience under step five.

An ALJ's decision is reviewed deferentially and is upheld if it is supported by substantial evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The reviewing court will not reweigh the evidence or substitute its judgment for that of the ALJ. *Terry*, 580 F.3d at 475 (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)). The ALJ must provide a "logical bridge" between the evidence and his conclusions but is not required to address every piece of

- 10 -

evidence. *Terry*, 580 F.3d at 475 ("The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions.")

## V. **Discussion**

In this case, the ALJ determined at step three that Plaintiff's impairments did not meet or medically equal the listed impairments. Thus, the ALJ proceeded to assess Plaintiff's RFC and ability to engage in past relevant work as part of step four. The ALJ determined that the Plaintiff possessed the RFC "to perform the full range of medium and light work except that she is restricted to performing simple, routine, repetitive tasks which require little judgment or decision-making, do not require extended written or oral communications, do not require contact with the public, do not require her to work around excessive dust, fumes, and odors, and do not require exposure to temperature extremes." (R. at 55.) The ALJ further determined that the Plaintiff was unable to perform any past relevant work. (R. at 58.) Finally, at step five, the ALJ found that jobs exist in significant numbers in the national economy that the Plaintiff can perform. (R. at 59.)

The Plaintiff argues that the administrative decision in this case should be reversed because the ALJ: (1) failed to give controlling weight to the medical opinion of her treating physician, Dr. Persina; (2) erred in determining that she did not meet Listing requirement 12.04 for affective disorders; (3) failed to address the VE's conclusions that a person requiring breaks and absences from work for given periods would be unemployable; and (4) did not ask the VE if his testimony was consistent with the Dictionary of Occupational Titles ("DOT").

- 11 -

## A.  Weight of Treating Physician Dr. Persina

Plaintiff argues that the ALJ erred in not according controlling weight or "great weight" to the opinion of the treating physician, Dr. Persina, who determined that Plaintiff had marked limitations in her activities of daily living and social functioning, had repeated episodes of decompensation, and had a minimal ability to carry out basic work activities. In reviewing the medical evidence, the ALJ concluded that he could not give controlling weight to Dr. Persina's opinion because it conflicted to some degree with the doctor's treatment notes showing signs of improvement in Plaintiff's progress.

The Social Security regulations require an ALJ to give controlling weight to a treating physician's medical opinion when it is both well-supported by objective medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). An ALJ may discount a treating physician's opinion, however, when it is "internally inconsistent" or is inconsistent with the opinion of a consulting physician. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Contrary to the Plaintiff's argument, the ALJ properly noted inconsistencies between Dr. Persina's conclusions and her treatment notes, as well as with the conclusions of the consulting psychologist, Dr. Ghadiali. The ALJ noted in several instances that Dr. Persina's treatment notes over a multi-month period showed a more optimistic view of Plaintiff's emotional state than did her written statement. For example, the Plaintiff reported that she had stopped drinking and had increased her daily living activities. Moreover, the ALJ cited treatment notes stating that Plaintiff also had periods in which she felt considerably better. Indeed, two of the last notes entered before Dr. Persina issued her August 28, 2006 report on

which Plaintiff primarily relies stated that Plaintiff was "feeling good," that her "affect is bright," and that she was "keeping sobriety." (R. at 344-45.)

The Commissioner argues that Dr. Persina's notes indicate a "continual improvement" in the Plaintiff's emotional well being. (Def's. Memo. at 4.) The Court need not reach the same conclusion, however, because the test is not whether the Plaintiff showed such improvement but whether the treatment notes are internally consistent with Dr. Persina's conclusions concerning the severity of Plaintiff's mental status. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion in inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it."). Based on the record, the Court finds that substantial evidence supports the ALJ's conclusion that Dr. Persina's treatment notes were inconsistent on several points with her August 28, 2006 report concerning the severity of Plaintiff's depression.

The ALJ also decided not to give Dr. Persina's opinion controlling weight because it conflicted to some degree with the evaluation of the consulting psychologist, Dr. Ghadiali. An ALJ is entitled to give credence to a consulting physician's opinion, and "it is up to the ALJ to decide which doctor to believe – the treating physician who has experience and knowledge of the case . . . [or] the consulting physician." *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992). In contrast to Dr. Persina's opinion that Plaintiff's depression was "severe," Dr. Ghadiali concluded that it was only "moderate." According to Dr. Ghadiali, Plaintiff's affective disorder resulted only in "moderate difficulties in maintaining concentration, persistence, or pace, with no episodes of extended decompensation or deterioration." (R. at 54, 322, 329.) By contrast, Dr. Persina indicated in her report that Plaintiff suffered from "marked" or "extreme"

impairments in concentration and concluded that Plaintiff had experienced repeated episodes of deterioration. (R. at 373.)

Accordingly, the record supports the ALJ's finding of inconsistencies between Dr. Persina's opinion and her notes as well as inconsistencies with Dr. Ghadiali's conclusions. The Plaintiff correctly argues, however, that an ALJ must do more than cite inconsistencies in the record when deciding not to give controlling weight to the treating physician's opinion. He must also weigh the treating physician's and the consulting psychologist's opinions. Social Security Ruling 96-2p states that even when a treating physician's conclusions are not given controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p. Section 404.1527 provides six factors that must be considered, including the length and nature of the treating relationship. 20 C.F.R. § 414.1527. Further, SSR 96-6p states in regard to opinions of a psychological consultant that an ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions." SSR 96-6p. Plaintiff argues that the ALJ failed to do so here, and the Commissioner has not responded to this claim.

The ALJ's decision shows that he did not state what weight, if any, was assigned to either Dr. Persina's or Dr. Ghadiali's opinions and did not discuss any of the factors an ALJ is required to consider under § 404.1527. The ALJ does not appear to have rejected Dr. Persina's opinion outright, but his RFC determinations suggest that he did not give "great" weight to it; whether he assigned it "some" or "little" weight is speculative. Moreover, the Court cannot tell if the ALJ assigned more or less weight to Dr. Persina's opinion than to Dr. Ghadiali's – even though he used it to deny controlling weight to Dr. Persina's report – or his reasons for doing so. A treating physician's report can be given controlling weight on some points and non-controlling weight on

others. *McMurtry v. Astrue*, — F. Supp.2d —, 2010 WL 4363404, at *12 (E.D. Wis. Oct. 27, 2010). This Court has made clear that an "ALJ's decision cannot leave the weight given to the treating physician's testimony to mere inference: the decision must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Ridigner v. Astrue*, 589 F. Supp.2d 995, 1006 (N.D. Ill. 2008); *see also Moore v. Astrue*, No. 08 CV 5180, 2010 WL 2166629, at *8-9 (N.D. Ill. May 27, 2010).

In the absence of any argument by the Commissioner on this issue, the Court finds that the ALJ failed to meet the standard governing the weight that must be assigned to medical opinions, and the decision is reversed and remanded with instructions to undertake the analyses required by SSR 96-2p, SSR 96-6p, and 20 C.F.R. § 1527.


## B.    The Listing Requirement

Plaintiff further argues that the ALJ erred at step three in finding that she did not meet the requirements for Listing 12.04 concerning affective disorders. Under the Social Security regulations, a claimant is eligible for DIB if she has an impairment or combination of impairments that meets the standards found in the Listing of Impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. I. A claimant meets Listing 12.04(C) if she has a chronic affective disorder lasting at least two years and meets other criteria that are not immediately relevant here. In her report, Dr. Persina concluded that Plaintiff met the requirements for Listing 12.04(C). Plaintiff argues that the ALJ erred in failing to find that she met the Listing 12.04(C) requirements because he did not give controlling weight to Dr. Persina's opinion.

The Commissioner has not directly responded to this contention, brushing it instead under the cover of Plaintiff's prior objection to the treatment of Dr. Persina's report. The Court agrees that Plaintiff's argument is essentially a restatement of her complaint that the ALJ erred in not giving controlling weight to her treating physician's report. It is for the ALJ, not the Court, to assign a proper weight to Dr. Persina's and Dr. Ghadiali's opinions. This means, however, that the Court cannot find at this point that substantial evidence supports the ALJ's Listing decision because his determination was primarily based on the unstated weights he gave to these reports. Thus, the Listing 12.04 claim must also be remanded to the ALJ for reconsideration in light of the weight he assigns to the medical opinions before him.

## C. Vocational Expert Testimony

Plaintiff also argues that the ALJ erred by failing to address testimony by the VE concerning her ability to work. The Plaintiff testified at the hearing that she locked herself in her room seven days out of each month and that she had crying spells at least three times per day. (R. at 22, 24.) Although he discounted Plaintiff's credibility, the ALJ asked the VE to consider the effect of her need for recurring but unpredictable breaks. (R. at 36.) He also asked the VE what would happen if a person were functional only seven days each month.[3] (R. at 37.) The VE responded that these limitations would not be tolerated by an employer. In his written opinion, however, the ALJ did not discuss the VE's conclusions. According to Plaintiff, the

---

[3] The Plaintiff does not object to the ALJ's second inquiry even though it directly contradicted her own testimony. Plaintiff stated that she was *unavailable* for work seven days each month, not that she available for only seven days. Plaintiff's only objection is that the ALJ's decision did not address the VE's testimony, not that the ALJ's question was improper.

ALJ's failure to consider the VE's testimony on this matter is substantial error that requires reversal.

Plaintiff's claim has led to considerable confusion on this issue, and the Court begins by discussing what she is *not* arguing in an attempt to discern the essence of Plaintiff's contention. The Commissioner construes Plaintiff's argument as an objection to the ALJ's finding that she was not entirely credible. (Def's. Resp. at 3, 8.) Plaintiff's Motion, however, does not clearly allege such an error. While Plaintiff begins the discussion by citing her own testimony, any credibility argument that she intends to assert is only obliquely stated. Plaintiff does not include a separate discussion of her credibility – a frequent objection in cases of this type – or cite any caselaw primarily concerned with credibility issues. An ALJ's credibility decisions are given special deference, and a court will overturn such findings only if they are "patently wrong." *Eichstadt v. Astrue,* 534 F.3d 663, 667-68 (7th Cir. 2008) (internal quote and citation omitted). Thus, insofar as Plaintiff even challenges the ALJ's credibility determination, the Court finds that her argument is conclusory and fails to overcome the high burden required for overturning a credibility finding.

The Court construes Plaintiff's argument as limited to what she states at the beginning of her Motion: the ALJ failed to address the VE's testimony that a person who needs unscheduled breaks and absences would be unemployable. The Court notes that Plaintiff does not specifically allege any error in the ALJ's RFC assessment at step four or attack his questions to the VE; Plaintiff essentially concedes that the ALJ's RFC assessment was correct and that his hypotheticals to the VE employing that assessment were proper. Her argument is that in not addressing the VE's response to the ALJ's own question, the ALJ improperly overlooked evidence supporting the Plaintiff's need for unscheduled breaks.

Stated in this fashion, Plaintiff's argument reverts once more to the ALJ's failure to assign a specific weight to Dr. Persina's opinion. Plaintiff contends that the ALJ "dismissed" that opinion. (Pltf's. Reply at 8.) If that were the case, and if the ALJ erred in doing so, then Plaintiff would prevail on this issue. The Seventh Circuit has found that an ALJ errs by failing to respond to a VE's testimony when the ALJ also incorrectly determines that no evidence supports the limitation to which the VE is responding. *Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003); *see also Griffin v. Massanari*, No. 00 C 7109, 2001 WL 1064476, at *10 (N.D. Ill. Sept. 13, 2001) ("[h]aving elicited the testimony of a vocational expert, the ALJ was not entitled to simply ignore significant portions of it.").

Unlike *Lopez*, however, this is not a case where the Court can clearly determine that the ALJ erred by deciding that no evidence supported the VE's testimony. In *Lopez*, the ALJ failed to respond to VE testimony that was elicited on cross-examination by the claimant; here, the ALJ himself posed the question about Plaintiff's restrictions to the VE. By implication, the ALJ appears to have believed that some evidence in the record justified asking the VE about Plaintiff's need for breaks but also thought the evidence was not sufficient to require him to address the VE's response in his decision or to include the restriction in his RFC assessment. The Court uses the word "appears" advisedly, because it can only speculate on what led the ALJ to pose his question to the VE but ignore his response. *Lopez* states that an ALJ does not err when he finds the evidence to be insufficient to consider a restriction. *Lopez*, 336 F.3d at 540. Whether the ALJ found the evidence on this point to be sufficient or insufficient, or whether he merely overlooked the issue is entirely unclear, and courts do not re-weigh the evidence submitted to an ALJ. *Miller v. Massanari*, 181 F. Supp.2d 978, 981 (N.D. Ill. 2002).

- 18 -

In the absence of such a weighing by the ALJ in this case, the Court cannot determine the basis for his decision not to consider the VE's testimony concerning Plaintiff's need for breaks. In correcting his error concerning Dr. Persina's report, the ALJ shall either discuss the VE's testimony on this issue or clarify his reasons for not doing so.

### D.     SSR 00-4p

Social Security Ruling 00-4p requires, in part, that occupational evidence provided by a VE at step five should be consistent with information provided by the DOT. Thus, when a conflict exists between the VE's testimony at a hearing and the DOT, an ALJ must "elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p. Here, both parties concede that the ALJ failed to do so. He asked the VE to provide jobs that were simple and repetitive, stating that "basically I don't want [Plaintiff] to have to think about what she's doing. It should be that repetitive." (R. at 34.) In response, the VE stated that Plaintiff could perform jobs such as a dining room attendant and hand packager, both of which require a Level 2 reasoning standard under the DOT. Level 2 reasoning requires a person "to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C. The Plaintiff argues that the ALJ failed to ask the VE to explain the potential conflict between his testimony on the "simple" jobs available to Plaintiff and the Level 2 "detailed" standard those jobs actually require. Relying on *Terry v. Astrue, supra*, the Commissioner contends that any error resulting from the ALJ's silence was harmless.

As they stand, neither of these arguments is compelling: the Commissioner merely summarizes *Terry* without addressing the caselaw on Level 2 reasoning, and the Plaintiff replies that the Court should ignore the Seventh Circuit's decision because it was improperly decided. *Terry*, however, is binding precedent, and the Court begins with that decision. In *Terry*, the ALJ failed to comply with SSR 00-4p when he did not ask the VE if his testimony conflicted with the DOT. The Seventh Circuit found this failure to be harmless error because the record showed that the claimant could, in fact, perform the job duties the ALJ posed to the VE. *Terry*, 580 F.3d at 478 ("[T]he error is harmless unless there actually was a conflict."). The Commissioner argues that *Terry* applies in this case because the ALJ limited Plaintiff to "simple, routine, repetitive tasks" (R. at 55) that do not conflict with Level 2 reasoning.

*Terry* involved Level 3 reasoning, not Level 2, and the Commissioner has not cited any authority that equates Level 2 with simple, routine tasks. The Court's own review of the issue shows that courts have not reached a uniform conclusion on the scope of Level 2 reasoning. At least one court in this Circuit has found that Level 2's reasoning standard is inconsistent with an RFC that limits a claimant to simple, routine work. *See Simms v. Astrue*, 599 F. Supp.2d 988, 1007-08 (N.D. Ind. 2009) (citing additional authorities supporting such a finding). This Court, however, has recently rejected the reasoning of *Simms*. *See Masek v. Astrue*, No. 08 C 1277, 2010 WL 1050293, at *22 (N.D. Ill. March 22, 2010). As *Masek* correctly noted, the Social Security regulations and the DOT use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties. The regulations divide such abilities into only two categories – "short and simple instructions" and "detailed" or "complex" ones – whereas the DOT uses a more graduated scale ranging from one to six that does not easily accommodate itself to the regulations' simple/complex dichotomy. *See* 20 C.F.R.

§ 416.969a(c)(1)(iii); DOT at 1010-1011. Thus, no one-to-one parallel can be found between "simple" as it used under the regulations and the DOT's requirements; a task may be "simple" under the regulations and still involve the kind of "detailed" tasks required under Level 2 reasoning. *Masek*, 2010 WL 1050293, at *22.

Based on this variation between the regulations and the DOT, *Masek* and other courts have found that Level 2 is not inconsistent with a claimant's limitation to simple, routine tasks. "To equate the Social Security regulations use of the term 'simple' with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word 'detail.' Such a 'blunderbuss approach is not in keeping with the finely calibrated nature in the which the DOT measures a job's simplicity." *Id.* (quoting *Meissl v. Barnhart*, 403 F. Supp.2d 981, 984 (C.D. Cal. 2005)). Other courts have reached similar conclusions. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that Level 2 reasoning is consistent with an RFC of simple, routine tasks); *Money v. Barnahrt*, 91 Fed. Appx. 210, 214 (3d Cir. 2004); *Flaherty v. Halter*, 182 F. Supp.2d 824, 850-51 (D. Minn. 2001).

This Court finds the reasoning of *Masek* more persuasive than that of *Simms* and adopts it to reject Plaintiff's claim that the VE's Level 2 jobs were fatally inconsistent with the ALJ's instructions. Although the DOT standard for Level 2 requires a person to carry out detailed instructions, it also limits the scope of those instructions to "uninvolved" matters. Other courts have found that the "uninvolved" qualification in Level 2 downplays the rigors of Level 2 instructions and brings them in line with an ALJ's limitation of job duties to "simple" tasks. *See, e.g., Meissl*, 403 F. Supp.2d at 984. This Court agrees with that finding. The Court, therefore, finds that any error stemming from the ALJ's failure to question the VE pursuant to SSR 00-4p was harmless, and Plaintiff's Motion is denied on this point. "[T]he doctrine of harmless

- 21 -

error . . . is fully applicable to judicial review of administrative decisions." *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003).

## VI. Conclusion

For the aforementioned reasons, the ALJ's decision is affirmed in part and remanded for further proceedings consistent with this opinion.

ENTER ORDER:

MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** December 6, 2010.